IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN OVERSIGHT,<br>1030 15th Street NW, B255<br>Washington, DC 20005<br><br>*Plaintiff*,<br><br>v.<br><br>U.S. DEPARTMENT OF THE TREASURY,<br>1500 Pennsylvania Avenue NW<br>Washington, DC 20220<br><br>*and*<br><br>SOCIAL SECURITY ADMINISTRATION,<br>6401 Security Blvd.<br>Baltimore, MD 21235<br><br>*Defendants*. | Case No. 25-cv-1966 |

**COMPLAINT**

1. Since its creation in January, the U.S. Department of Government Efficiency ("DOGE")[1] has run roughshod over the executive branch, implementing massive changes and upending federal agencies with an apparent callous disregard—if not enthusiasm—for the consequences. This effort inserted "DOGE Teams" into the hearts of federal agencies.

2. Among its efforts, DOGE swiftly swept into numerous federal government agencies demanding unfettered access to federal data systems, including sensitive payment and benefits systems at the Social Security Administration ("SSA") and the U.S. Department of the

---

[1] In this Complaint, "DOGE" refers collectively to the Department of Government Efficiency, U.S. DOGE Service ("USDS"), U.S. DOGE Service Temporary Organization, and agency DOGE Teams.

1

Treasury ("Treasury"). Access to these databases is severely limited given the sensitive personal data they contain about hundreds of millions of people—for example, fewer than 50 people have access to SSA databases that contain Americans' private financial and personal information.[2]

3. Because of the sensitivity of this information, strict rules limit how government agencies can access and share this data. Federal employees who handle sensitive data must pass extensive background checks to ensure the personal data in these sensitive systems is not sold, lost, or leaked.[3]

4. Many of the DOGE representatives seeking to access sensitive data at both SSA and Treasury had no background in government or training in how to handle sensitive government data. For example, Marko Elez, a 25-year-old DOGE software engineer and former Elon Musk employee with a history of posting racist content on social media, was in February mistakenly granted read and write access to a Treasury payment system.[4]

5. Elez was found to have likely broken the law by sending an email with a spreadsheet containing protected personal information from Treasury records to individuals outside the agency.[5]

---

[2] Stephen Fowler & Jenna McLaughlin, *DOGE Says It Needs to Know the Government's Most Sensitive Data, But Can't Say Why*, NPR (Mar. 26, 2025, 9:00 AM), https://www.npr.org/2025/03/26/nx-s1-5339842/doge-data-access-privacy-act-social-security-treasury-opm-lawsuit.

[3] *See* Laurel Wamsley, *The Government Already Knows a Lot About You. DOGE Is Trying to Access All of It*, NPR (Mar. 11, 2025, 5:00 AM), https://www.npr.org/2025/03/11/nx-s1-5305054/doge-elon-musk-security-data-information-privacy.

[4] *See* Shayna Jacobs, *Judge Orders Ban on DOGE from Access to Sensitive Treasury Data*, Wash. Post (updated Feb. 21, 2025), https://www.washingtonpost.com/national-security/2025/02/21/doge-treasury-data-access; Katherine Long, *DOGE Staffer Resigns Over Racist Posts,* WSJ (updated Feb. 7, 10:46 AM), https://www.wsj.com/tech/doge-staffer-resigns-over-racist-posts-d9f11a93.

[5] *See* Fowler & McLaughlin, *supra* note 2; Stephen Fowler & Jenna McLaughlin, *DOGE Staffer Who Shared Treasury Data Now Has More Access to Government Systems*, NPR (Mar. 31, 2025, 12:30 PM), https://www.npr.org/2025/03/31/nx-s1-5345708/doge-data-access-labor-cfpb-hhs.

6. Another DOGE representative who was stationed at SSA, Akash Bobba—a 21-year-old former Silicon Valley intern—was granted access to the master data warehouse at SSA before his background check was completed or his detail agreement to work at SSA was finalized.[6]

7. Although Bobba agreed to do any work related to Social Security data on site from the agency's headquarters for security reasons, he was found to have been working off-site where other people may have had access to the protected SSA information.[7]

8. At both SSA and Treasury, senior nonpolitical career employees attempted to protect the privacy and security of these sensitive data systems from the DOGE representatives' improper, insecure, and in some cases unlawful access. Some of those nonpolitical employees resigned after fierce disagreements over DOGE representatives' access to these data systems—which is otherwise tightly restricted—and what conditions and protections should be imposed to safeguard the sensitive information contained therein.[8]

---

[6] *See* Fowler & McLaughlin, *supra* note 2; Andrew Feinberg, *Elon Musk Left the Fate of Your Social Security Payments in the Hands of a 21-Year-Old DOGE Tech Bro*, The Independent (June 16, 2025), https://www.the-independent.com/news/world/americas/us-politics/elon-musk-doge-social-security-b2771078.html.

[7] *See* Fowler & McLaughlin, *supra* note 2.

[8] *See, e.g.*, Jeff Stein *et al.*, *Senior U.S. Official Exits After Rift with Musk Allies over Payment System*, Wash. Post (updated Jan. 31, 2025), https://www.washingtonpost.com/business/2025/01/31/elon-musk-treasury-department-payment-systems; Alan Rappeport *et al.*, *Top Social Security Official Leaves After Musk Team Seeks Data Access*, N.Y. Times (Feb. 17, 2025), https://www.nytimes.com/2025/02/17/us/politics/social-security-musk-team-access.html.

9.	Several lawsuits, grounded in federal privacy law, sought to limit DOGE's access to SSA and Treasury data, and courts initially limited that access.[9] However, recent court decisions have cleared DOGE's path to accessing these sensitive systems.[10]

10.	As a result, the American public's need to know which individuals have access and what they are doing with the private, personal information entrusted to those systems has grown increasingly urgent.

11.	On information and belief, DOGE seeks access to these massive pools of federal data, in part, to compile those records into a single centralized database with information on every resident of the United States.[11]

12.	Creating such a centralized database could compromise the privacy and security protections for millions of individuals' personal data, including by dramatically heightening the risk of exposing this data to hackers and other adversaries.[12]

13.	DOGE has already leveraged its access for political retribution. For instance, it has identified and demanded the cancellation of important SSA contracts—such as those providing

---

[9] *See, e.g.*, *Am. Fed'n of State, Cnty. & Mun. Emps. v. Soc. Sec. Admin*, No. ELH-25-0596, 2025 WL 868953, at *69 (D. Md. Mar. 20, 2025) (granting a temporary restraining order to limit DOGE's access to SSA data); *Am. Fed'n of Teachers v. Bessent*, No. DLB-25-0430, 2025 WL 895326, at *32 (D. Md. Mar. 25, 2025) (granting a preliminary injunction to limit DOGE's access to Treasury data).

[10] *See, e.g.*, *Soc. Sec. Admin. v. Am. Fed'n of State, Cnty. & Mun. Emps.*, No. 24A1063, 145 U.S. 1626 (June 6, 2025), *available at* https://www.supremecourt.gov/opinions/24pdf/24a1063_6j37.pdf; *New York v. Trump*, No. 25-CV-1144 (S.D.N.Y. May 27, 2025), *available at* https://storage.courtlistener.com/recap/gov.uscourts.nysd.636609/gov.uscourts.nysd.636609.156.0.pdf.

[11] *See* Hannah Nathanson *et al.*, *DOGE Aims to Pool Federal Data, Putting Personal Information at Risk*, Wash. Post (May 7, 2025), https://www.washingtonpost.com/business/2025/05/07/doge-government-data-immigration-social-security.

[12] *See id.*

4

basic services like allowing newborns to receive Social Security numbers at hospitals—in states that are perceived as political enemies of the current administration.[13]

14. DOGE has also spread false assertions that fraud is rampant within Social Security programs based on its own misinterpretations of SSA data.[14]

15. For example, DOGE has fixated on false claims of dead people in SSA databases. Based on its own misunderstanding, DOGE has used its influence to alter the database in support of its narrative, demanding that SSA staff mark certain groups of individuals as deceased.[15]

16. At Treasury, a confidential assessment by an outside contractor determined that DOGE's access to Treasury's sensitive payment network posed an "unprecedented insider threat risk" and raised a significant risk of a potential breach of information that could lead to the public exposure of extremely sensitive national security information such as the identity of U.S. spies abroad.[16]

17. Seeking to learn more about DOGE's access to these sensitive data systems, earlier this year, Plaintiff American Oversight submitted five FOIA requests to Treasury and SSA requesting information about who is accessing this sensitive data and what is being done to ensure that this data is protected from misuse.

18. Having received no response to its FOIA requests, Plaintiff American Oversight now brings this action against the U.S. Department of the Treasury and the Social Security

---

[13] *See* Alexandra Berzon *et al.*, *The Bureaucrat and the Billionaire: Inside DOGE's Chaotic Takeover of Social Security*, N.Y. Times (June 16, 2025), https://www.nytimes.com/2025/06/16/us/politics/doge-social-security.html.
[14] *See id.*
[15] *See id.*
[16] Joseph Menn *et al.*, *Treasury Was Warned DOGE Access to Payments Marked an 'Insider Threat,'* Wash. Post (updated Feb. 7, 2025), https://www.washingtonpost.com/national-security/2025/02/07/doge-treasury-payments-system-warning.

Administration under the Freedom of Information Act, 5 U.S.C. § 552 (FOIA), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, seeking declaratory and injunctive relief to compel compliance with the requirements of FOIA.

## JURISDICTION AND VENUE

19. This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1331, 2201, and 2202.

20. Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

21. Because Defendants have failed to comply with the applicable time-limit provisions of FOIA, American Oversight is deemed to have exhausted its administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C)(i) and is now entitled to judicial action enjoining Defendants from continuing to withhold agency records and ordering the production of agency records improperly withheld.

## PARTIES

22. Plaintiff American Oversight is a nonpartisan, non-profit section 501(c)(3) organization primarily engaged in disseminating information to the public. American Oversight is committed to promoting transparency in government, educating the public about government activities, and ensuring the accountability of government officials. Through research and requests for public records under FOIA, American Oversight uses the information it gathers, and its analysis of it, to educate the public about the activities and operations of the federal government through reports, published analyses, press releases, and other media. The organization is incorporated under the laws of the District of Columbia.

23. Defendant U.S. Department of the Treasury is a department of the executive branch of the U.S. government headquartered in Washington, DC, and an agency of the federal government within the meaning of 5 U.S.C. § 552(f)(1). Treasury has possession, custody, and control of records that American Oversight seeks.

24. Defendant Social Security Administration is an agency of the federal government within the meaning of 5 U.S.C. § 552(f)(1), headquartered in Baltimore, MD. SSA has possession, custody, and control of records that American Oversight seeks.

## STATEMENT OF FACTS

25. Between February 25 and April 10, 2025, American Oversight submitted five FOIA requests to Treasury and SSA seeking to shed light on the agencies' policies and practices governing access to federal payment systems, personally identifiable or other sensitive information, and their cooperation with representatives of DOGE.

*February 25 Treasury Data Access Request*

26. On February 25, 2025, American Oversight submitted a request to Treasury bearing internal tracking number TREAS-25-0500 ("Treasury Data Access Request"), seeking the following records from January 20, 2025, through the date the search is conducted:

    1. Records sufficient to identify the name, title, office, category of employment, and level of access of all individuals who have been granted access for the first time to personally identifiable or sensitive information or data since January 20, 2025.

    2. Records sufficient to identify, for all individuals identified above in part one of this request:

        a. The training provided to such individuals regarding the requirements for handling personally identifiable or sensitive information or data.

        b. The specific information or data to which such individuals have been granted access.

>> For part 2b of this request, American Oversight does <u>not</u> request — and this request specifically <u>excludes</u> — the complete sets of information or data responsive to this request. Rather, this request seeks records <u>sufficient to identify</u> this information or data, such as the name of the information or datasets.

> c. The specific legal purpose for granting such individuals access to that personally identifiable or sensitive information or data.

3. Records sufficient to identify all steps that your agency has taken to protect personally identifiable or sensitive information or data in your agency's control, including records sufficient to identify how those steps have been communicated to each individual identified above in part one of this request.

4. Records sufficient to identify all memoranda of understanding (MOUs) between your agency and the Department of Government Efficiency (DOGE), U.S. DOGE Service (USDS, formerly U.S. Digital Service), and/or the U.S. DOGE Temporary Service Organization.

> American Oversight requests as responsive to part four of this request a complete, final copy of each responsive MOU.

*See* Exhibit 1.

27. On February 26, 2025, Treasury acknowledged receipt of this request and assigned it agency tracking number 2025-FOIA-01541. *See* Exhibit 2.

28. As of the date of this Complaint, American Oversight has received no further communications from Treasury regarding this FOIA request.

*February 25 SSA Data Access Request*

29. On February 25, 2025, American Oversight submitted a request to SSA bearing internal tracking number SSA-25-0508 ("SSA Data Access Request"), seeking the following records from January 20, 2025, through the date the search is conducted:

1. Records sufficient to identify the name, title, office, category of employment, and level of access of all individuals who have been granted access for the first time to personally identifiable or sensitive information or data since January 20, 2025.

8

2. Records sufficient to identify, for all individuals identified above in part one of this request:

   a. The training provided to such individuals regarding the requirements for handling personally identifiable or sensitive information or data.

   b. The specific information or data to which such individuals have been granted access.

      For part 2b of this request, American Oversight does not request — and this request specifically excludes — the complete sets of information or data responsive to this request. Rather, this request seeks records sufficient to identify this information or data, such as the name of the information or datasets.

   c. The specific legal purpose for granting such individuals access to that personally identifiable or sensitive information or data.

3. Records sufficient to identify all steps that your agency has taken to protect personally identifiable or sensitive information or data in your agency's control, including records sufficient to identify how those steps have been communicated to each individual identified above in part one of this request.

4. Records sufficient to identify all memoranda of understanding (MOUs) between your agency and the Department of Government Efficiency (DOGE), U.S. DOGE Service (USDS, formerly U.S. Digital Service), and/or the U.S. DOGE Temporary Service Organization.

   American Oversight requests as responsive to part four of this request a complete, final copy of each responsive MOU.

5. All records governing access to personally identifiable or sensitive information or data, including directives, instructions, directions, memoranda, policies, procedures, informal email guidance, and/or any other informal written guidance.

*See* Exhibit 3.

30. On February 25, 2025, SSA acknowledged receipt of this request and assigned it agency tracking number 2025-FOIA-01073. *See* Exhibit 4.

9

31. As of the date of this Complaint, American Oversight has received no further communications from SSA regarding this FOIA request.

*February 28 Treasury Communications Request*

32. On February 28, 2025, American Oversight submitted a request to Treasury bearing internal tracking number TREAS-25-0537 ("Treasury Communications Request"), seeking the following records:

> 1. All email communications (including emails, email attachments, complete email chains, calendar invitations, and calendar invitation attachments) and text messages (including complete text message threads or conversations) or messages on messaging platforms (such as Signal, Slack, GChat or Google Hangouts, Lync, Skype, X (formerly Twitter) direct messages, Facebook messages, WhatsApp, Telegram, or Parler) <u>sent</u> by any of the TREAS officials listed below <u>and</u> containing any of the following key terms, also listed below.
>
> <u>TREAS Officials</u>:
> i. Scott Bessent, Secretary of the Treasury
> ii. David Lebryk, former acting Secretary of the Treasury
> iii. Dan Katz, Deputy Secretary of the Treasury and Chief of Staff
> iv. Cora Alvi, Deputy Chief of Staff
> v. Samantha Schwab, Deputy Chief of Staff
> vi. Anyone serving in the capacity of White House Liaison
> vii. Any official who has been selected as a member of TREAS's "DOGE team"
>
> <u>Key Terms</u>:
> a. Elon
> b. Musk
> c. DOGE
> d. "Department of Government Efficiency"
> e. USDS
> f. Krause
> g. Elez
> h. Kliger
> i. "payment system"
> j. "payments system"
> k. "Fiscal Service"
> l. "payment integrity"
> m. "operational efficiency"
> n. "payment file"

10

      o. SPS
      p. "ASAP.gov"
      q. "Automated Standard Application"
      r. PAM
      s. "Payment Automation Manager"
      t. "Do Not Pay"
      u. "death master file"
      v. 3325
      w. 6103
      x. impoundment

In an effort to accommodate your office and reduce the number of potentially responsive records to be processed and produced, American Oversight has limited part one of this request to emails, text messages, and messages on messaging platforms <u>sent</u> by any of the listed officials —and/or anyone communicating on their behalf, such as a chief of staff, assistant, and/or secretary.

To be clear, however, for emails, American Oversight requests that complete email chains be produced, displaying both sent and received messages. This means that both a listed official's response to a responsive email and the initial received message are responsive to this request and should be produced.

For text messages or messages on other messaging platforms, American Oversight requests that full text message threads/conversations be produced. For example, if an official sent a text message containing any of the key terms listed above, the complete thread/conversation for the timeframe listed below should be produced, and not just the message containing the key term.

For part one of this request, please provide all responsive records from January 20, 2025, through the date the search is conducted.

2. All email communications (including emails, email attachments, complete email chains, calendar invitations, and calendar invitation attachments) <u>sent by</u> any of the former TREAS officials listed below <u>and</u> containing any of the following key terms, also listed below.

    <u>Former TREAS Officials</u>:
    i.     Janet Yellen, Secretary of the Treasury
    ii.    Adewale "Wally" Adeyemo, Deputy Secretary of the Treasury
    iii.   Didem Nisanci, Chief of Staff

    <u>Key Terms</u>:
    a. Elon

    b. Musk
    c. DOGE
    d. "Department of Government Efficiency"
    e. USDS
    f. Krause
    g. "payment system"
    h. "payments system"
    i. "Fiscal Service"
    j. BFS
    k. 6103
    l. impoundment

In an effort to accommodate your office and reduce the number of potentially responsive records to be processed and produced, American Oversight has limited part two of this request to emails <u>sent</u> by any of the listed officials —and/or anyone communicating on their behalf, such as a chief of staff, assistant, and/or secretary. To be clear, however, American Oversight still requests that complete email chains be produced, displaying both sent and received messages. This means that both an individual's response to an email and the initial received message are responsive to this request and should be produced.

For part two of this request, please provide all responsive records from November 6, 2024, through January 20, 2025.

3. All email communications (including emails, email attachments, complete email chains, calendar invitations, and calendar invitation attachments) <u>sent by</u> any of the TREAS officials listed below <u>and</u> containing any of the following key terms, also listed below.

<u>TREAS Officials</u>:
i. Timothy Gribben, Commissioner, Bureau of Fiscal Service
ii. Joseph Gioeli, Deputy Commissioner, Transformation and Modernization, Bureau of Fiscal Service
iii. Nate Reboja, Chief Information Officer and Assistant Commissioner, Information and Security Services, Bureau of Fiscal Service

<u>Key Terms</u>:
a. Elon
b. Musk
c. DOGE
d. "Department of Government Efficiency"
e. USDS
f. Krause
g. Elez

      h. Kliger
      i. "payment integrity"
      j. "operational efficiency"
      k. 6103
      l. impoundment

In an effort to accommodate your office and reduce the number of potentially responsive records to be processed and produced, American Oversight has limited part two of this request to emails <u>sent</u> by any of the listed officials —and/or anyone communicating on their behalf, such as a chief of staff, assistant, and/or secretary. To be clear, however, American Oversight still requests that complete email chains be produced, displaying both sent and received messages. This means that both an individual's response to an email and the initial received message are responsive to this request and should be produced.

For part three of this request, please provide all responsive records from November 6, 2024, through the date the search is conducted.

*See* Exhibit 5.

33. On February 28, 2025, Treasury acknowledged receipt of this request and assigned it agency tracking number 2025-FOIA-01569. *See* Exhibit 6.

34. As of the date of this Complaint, American Oversight has received no further communications from Treasury regarding this FOIA request.

*February 28 Treasury Payments Systems Request*

35. On February 28, 2025, American Oversight submitted a request to Treasury bearing internal tracking number TREAS-25-0535 ("Treasury Payment Systems Request"), seeking the following records:

1. All records governing the operation, access controls, and separation of duties protocols of the Bureau of Fiscal Service payments systems — including directives, instructions, directions, memoranda, policies, procedures, protocols, informal email guidance, and/or any other informal written guidance — in effect on January 19, 2025.

2. All records governing the operation, access controls, and separation of duties protocols of the Bureau of Fiscal Service payments systems — including directives, instructions, directions, memoranda, policies,

13

      procedures, informal email guidance, and/or any other informal written guidance — issued, updated, modified, rescinded, and/or otherwise altered on or after January 20, 2025.

3. Records sufficient to identify the name, title, category of employment, and level of access, of all federal officials with any level of access to the Bureau of Fiscal Service payments systems on January 19, 2025.

   For part three of this request, to the extent this information is aggregated and maintained in a database or spreadsheet, American Oversight would accept as responsive a printout from the database containing fields responsive to this request.

4. Records sufficient to identify the name, title, category of employment, and level of access, of all federal officials who gained any level of access to the Bureau of Fiscal Service payments systems from January 20, 2025, through the date the search is conducted.

   For part four of this request, to the extent this information is aggregated and maintained in a database or spreadsheet, American Oversight would accept as responsive a printout from the database containing fields responsive to this request.

*See* Exhibit 7.

36. On February 28, 2025, Treasury acknowledged receipt of this request and assigned it agency tracking number 2025-FOIA-01567. *See* Exhibit 8.

37. As of the date of this Complaint, American Oversight has received no further communications from Treasury regarding this FOIA request.

*April 10 SSA DOGE Request*

38. On April 10, 2025, American Oversight submitted a request to SSA bearing internal tracking number SSA-25-1042 ("SSA DOGE Request"), seeking the following records:

   1. All email communications (including emails, complete email chains, calendar invitations, and attachments thereto) between (a) the officials listed below, and (b) anyone communicating from DOGE and/or the U.S. DOGE Service (USDS), including, but not limited to, anyone communicating from an email address ending in @doge.gov, @doge.eop.gov, and/or the email address erm71@who.eop.gov.

<u>SSA Officials</u>:
1. Leland Dudek, Acting Commissioner
2. Anyone serving in the capacity of Deputy Commissioner
3. Anyone serving in the capacity of Chief of Staff
4. Chad Poist, Acting Deputy Chief of Staff
5. Stephen McGraw, Acting Executive Secretary
6. Dustin Brown, Chief Operating Officer
7. Doris Diaz, Acting Deputy Commissioner, Operations
8. Jeffrey Buckner, Acting Deputy Commissioner, External Affairs
9. Mark Steffensen, Acting Deputy Commissioner, Legal and Policy/General Counsel

2. All email communications (including emails, complete email chains, calendar invitations, and attachments thereto) <u>between</u> (a) the officials listed above in part 1, <u>and</u> (b) anyone communicating from White House, including, but not limited to, anyone communicating from an email address ending in @who.eop.gov.

3. All email communications (including emails, complete email chains, calendar invitations, and attachments thereto) <u>sent</u> by the officials listed above in part 1 and containing any of the key terms listed below.

<u>Key Terms</u>:
a. Musk
b. Elon
c. DOGE
d. USDS
e. "government efficiency"
f. "valor equity"
g. Waste
h. Fraud
i. Abuse
j. "phone service"
k. Privatize
l. Privatization
m. Maine
n. Contract
o. Mills
p. Payback
q. Retribution
r. Petulant
s. "improper payment"

In an effort to accommodate your office and reduce the number of potentially responsive records to be processed and produced, American Oversight has limited part 3 of its request to emails sent by the listed

15

officials. To be clear, however, American Oversight still requests that complete email chains be produced, displaying both sent and received messages. This means, for example, that both a listed official's response to an email containing a listed key term and the initial received message are responsive to this request and should be produced.

4. All email communications (including emails, complete email chains, calendar invitations, and attachments thereto) <u>sent</u> by the SSA officials listed below to any email address ending in .com, .co, .us, .net, .org, .mail, .edu, .law, .legal, .ch, .me, or .group.

    <u>SSA Officials</u>:
    1. Akash Bobba
    2. Antonio Gracias
    3. Ethan Shaotran
    4. Gautier Cole Killian
    5. Jon Koval
    6. Luke Farritor
    7. Marko Elez
    8. Nikhil Rajpal
    9. Payton Rehling
    10. Scott Coulter

    In an effort to accommodate your office and reduce the number of potentially responsive records to be processed and produced, American Oversight has limited part 4 of its request to emails sent by the listed officials. To be clear, however, American Oversight still requests that complete email chains be produced, displaying both sent and received messages. This means, for example, that both a listed official's response to an email from an email address ending in .com and the initial received message are responsive to this request and should be produced.

5. All calendars or calendar entries for the SSA officials listed above in part 3, including any calendars maintained on their behalf.

    American Oversight requests that the calendars be produced in a format that includes all invitees, any notes, and all attachments. Please do not limit your search to electronic calendars; we request the production of any calendar — paper or electronic, whether on government- issued or personal devices — used to track or coordinate how the officials allocate their time on agency business.

    This search should include any calendars associated with the accounts of the listed officials, as well as any official calendars maintained for them, including by an aide, assistant, or scheduler.

16

    6. For all employees who have entered into SSA in a PAS position, a presidentially-appointed position, a non-career SES position, a Schedule C position, or any administratively-determined position to be a "political appointee:"

        a. The resume provided by the individual to SSA in connection with determining the appropriate salary for the individual, or, if that is not available, a recent resume contained within the agency's records. We have no objection to the redaction of contact information (addresses, telephone numbers, email addresses) for the employee or reference, or to the redaction of past salary information. Employment, education, and professional association information is not exempt and we object to any redactions of such information.

        b. All conflicts or ethics waivers or authorizations for the individual, including authorizations pursuant to 5 C.F.R. § 2635.502.

*See* Exhibit 9.

39. On April 10, 2025, SSA acknowledged receipt of this request and assigned it agency tracking number 2025-FOIA-01652. *See* Exhibit 10.

40. As of the date of this Complaint, American Oversight has received no further communications from SSA regarding this FOIA request.

*Exhaustion of Administrative Remedies*

41. As of the date of this Complaint, the Defendants have failed to either: (a) notify American Oversight of any determination regarding American Oversight's FOIA requests, including the scope of any responsive records Defendants intend to produce or withhold and the reasons for any withholdings; or (b) produce the requested records or demonstrate that the requested records are lawfully exempt from production.

42. More than 20 working days have passed since all FOIA requests at issue in this lawsuit were filed.

43. Through Defendants' failures to respond to American Oversight's FOIA requests within the time period required by law, American Oversight has constructively exhausted its administrative remedies and now seeks immediate judicial review.

**CLAIMS FOR RELIEF**
**COUNT I**
**Violation of FOIA, 5 U.S.C. § 552**
**Failure to Conduct Adequate Searches for Responsive Records**

44. American Oversight repeats the allegations in each of the foregoing paragraphs and incorporates them as though fully set forth herein.

45. American Oversight properly requested records within Defendants' possession, custody, and control.

46. Defendants are agencies subject to and within the meaning of FOIA, and they must therefore make reasonable efforts to search for requested records.

47. Defendants have failed to promptly and adequately search for agency records responsive to American Oversight's FOIA requests.

48. Defendants' failures to conduct adequate searches for responsive records violate FOIA.

49. Plaintiff American Oversight is therefore entitled to injunctive and declaratory relief requiring Defendants to promptly make reasonable efforts to search for records responsive to American Oversight's FOIA requests.

**COUNT II**
**Violation of FOIA, 5 U.S.C. § 552**
**Wrongful Withholding of Non-Exempt Responsive Records**

50. American Oversight repeats the allegations in each of the foregoing paragraphs and incorporates them as though fully set forth herein.

51. American Oversight properly requested records within Defendants' possession, custody, and control.

52. Defendants are wrongfully withholding non-exempt agency records requested by American Oversight by failing to produce non-exempt records responsive to its FOIA requests.

53. Defendants are wrongfully withholding non-exempt agency records requested by American Oversight by failing to segregate exempt information in otherwise non-exempt records responsive to American Oversight's FOIA requests.

54. Defendants' failures to provide all non-exempt responsive records violate FOIA.

55. Plaintiff American Oversight is therefore entitled to declaratory and injunctive relief requiring Defendants to promptly produce all non-exempt records responsive to its FOIA requests and provide indexes justifying the withholding of any responsive records withheld under claim of exemption.

## REQUESTED RELIEF

WHEREFORE, American Oversight respectfully requests the Court to:

(1) Order Defendants to conduct a search or searches reasonably calculated to uncover all records responsive to American Oversight's FOIA requests;

(2) Order Defendants to produce, within 20 days of the Court's order, or by such other date as the Court deems appropriate, any and all non-exempt records responsive to American Oversight's FOIA requests with indexes justifying the withholding of any responsive records withheld under claim of exemption;

(3) Enjoin Defendants from continuing to withhold any and all non-exempt records responsive to American Oversight's FOIA requests;

(4) Award American Oversight the costs of this proceeding, including reasonable attorneys' fees and other litigation costs reasonably incurred in this action, pursuant to 5 U.S.C. § 552(a)(4)(E); and

(5) Grant American Oversight such other relief as the Court deems just and proper.

Dated: June 24, 2025                    Respectfully submitted,

*/s/ David Kronig*
David Kronig
D.C. Bar No. 1030649
Jessica Jensen*
D.C. Bar No. 1048305
AMERICAN OVERSIGHT
1030 15th Street NW, B255
Washington, DC 20005
(202) 897-3915
david.kronig@americanoversight.org

*Counsel for Plaintiff*

*DDC Admission Pending